IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 4:26-cr-00082 |
| | : | |
| v. | : | (Chief Judge Brann) |
| | : | |
| MARCO HERRERA, | : | (Electronically Filed) |
| Defendant. | : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Marco Herrera will appear before this Honorable Court to be sentenced following his plea of guilty to one count of 18 U.S.C. § 111(a), assaulting, resisting or impeding certain officers. This sentencing memorandum addresses a single objection to the modified/expedited presentence investigation report ("PSR") and respectfully requests a sentence of time-served, based on an evaluation of the 18 U.S.C. § 3553(a) sentencing factors, as applied to Mr. Herrera. Mr. Herrera specifically requests a sentence of time-served so that he can be immediately removed to Guatemala, hopefully in time for the birth of his child, due on October 25, 2026.

## I. BACKGROUND

On April 1, 2026, officers with Immigration and Customs Enforcement encountered Mr. Herrera in the parking lot of the Comfort Inn in Williamsport, Pennsylvania. Mr. Herrera was sitting in his pick-up truck. After running several

checks, officers determined that Mr. Herrera was a citizen of Guatemala without lawful status in the United States. Officers approached Mr. Herrera's vehicle and asked him for identification. Mr. Herrera showed officers a New Jersey driver's license but would not hand it over. Officers then ordered Mr. Herrera to exit the vehicle, telling him that he would be taken into custody to be identified. At this point, Mr. Herrera began resisting arrest by holding onto the steering wheel of the vehicle and hooking his leg in the door well.

Mr. Herrera was removed from the vehicle by the officers and continued to resist arrest, breaking free from the officers' grips as they were trying to handcuff him. It is during this point that Mr. Herrera's elbow strikes an officer, without causing injury. Mr. Herrera ran about 20 to 30 feet from the officers before being tazed. Upon being tazed, Mr. Herrera fell to the ground and was taken into custody by the officers. From the time Mr. Herrera refused to leave the vehicle until he was tazed took less than 2 minutes.

## II. OBJECTION TO PSR – MR. HERRERA IS A ZERO-POINT OFFENDER UNDER U.S.S.G. § 4C1.1.

As the PSR reflects, Mr. Herrara has zero criminal history points. (PSR ¶ 25). But the Probation Office failed to decrease his offense level by 2 levels for being a zero-point offender under Section 4C1.1. (PSR ¶ 20). One of the criteria for that two-level reduction is that 'the defendant did not use violence or credible

threats of violence in connection with the offense." *See* U.S.S.G. § 4C1.1(a)(3). Presumably, the Probation Office believed that Mr. Herrera was ineligible for the reduction because he used "violence" in connection with the offense. But a careful examination of the facts underlying the offense demonstrates that Mr. Herrara did not use violence within the meaning of that term.

The Sentencing Guidelines Manual does not define the term "use violence or credible threat of violence" within Section 4C1.1 or its commentary. And when no definitions are provided, courts look to dictionary definitions to determine the common ordinary meaning. *See United States v. Adair*, 38 F.4th 341, 350 (3d Cir. 2022).

District Courts in the District of Columbia have had multiple occasions to apply the dictionary definitions of the terms in Section 4C1.1(a)(3) in the context of the January 6 defendants. *See, e.g., United States v. Bauer*, 714 F. Supp. 3d 1 (D.D.C. 2024); *United States v. Yang*, No. 23-100, 2024 WL 519962 (D.D.C. Feb. 9, 2024); *United States v. Williams*, No. 21-618, 2024 WL 1239989 (D.D.C. Mar. 22, 2024). Those courts have determined that "violence" is typically defined as the use of physical force with some intent to harm. *See Bauer*, 714 F. Supp. 3d at 5 (citing *Violence*, Black's Law Dictionary (11th ed. 2019)) ("[t]he use of physical force, usu[ally] accompanied by fury, vehemence, or outrage; esp[ecially] physical

force unlawfully exercised with the intent to harm."); *Yang*, 2024 WL 519962, at *4 (same); *Williams*, 2024 WL 1239989, at *2 (citing *Violence*, Oxford English Dictionary (last visited Mar. 18, 2024)) ("the unlawful exercise of physical force against a person, property, etc.; physically violent behaviour or treatment" or, in the legal context, "the unlawful exercise of physical force, intimidation by the exhibition of such force.").

Other courts interpreting the term "violence" as used in other parts of the Sentencing Guidelines have also found that to qualify as "using violence," one must use physical force with the intent to injure. *See United States v. Pineda-Duarte*, 933 F.3d 519, 523 (6th Cir. 2019) (interpreting U.S.S.G. § 2D1.1(b)(2)'s identically-worded "used violence" provision in the absence of a Guidelines definition and relying on Black's Law Dictionary and Webster's Dictionary).

Mr. Herrera did not use physical force with the intent to do harm or injure. Rather, Mr. Herrera resisted being taken into custody. He first refused to exit his vehicle, holding onto the steering wheel and hooking his foot inside the door well. (PSR ¶ 8). But agents used "vehicle extraction tactics" to remove him from the vehicle where he continued to resist. (PSR ¶¶ 8-9). In the course of his resisting, Mr. Herrera struck an officer in the shoulder with his raised elbow when he ran from the vehicle. (PSR ¶ 9). The officer was not injured. Mr. Herrera's

movements were similar to the defendant's in *Yang* which were "brief and reactive" and not "with the degree of aggression necessary" to fairly characterize them as violence. *See Yang*, 2024 WL 519962, at *4.

In *Yang*, the defendant made physical contact with two officers while he was present in the Rotunda of the Capitol building. First, he grabbed an officer's wrist and released it almost instantly. Next, he grabbed an officer's baton but let go as he staggered backward. The court found that even if the defendant applied physical force, the contact was not made with intent to harm and was not accompanied by fury, vehemence, or outrage or the like. Similarly, Mr. Herrera made physical contact with an officer during his efforts to resist and evade his arrest, but his actions were not accompanied by fury or outrage. His contact with the agent was brief and reactive to the situation.

Because Mr. Herrera did not "use violence," he should receive a 2-level reduction in his offense level under Section 4C1.1 because he is a zero-point offender. Upon receipt of this reduction, Mr. Herrera's Total Offense Level is 9. With a Criminal History Category of I, his advisory guideline imprisonment range is 4 to 10 months.

## III. 18 U.S.C. § 3553(a) SENTENCING FACTORS

The Nature and Circumstances of the Offense and the History and Characteristics of Mr. Herrera

Mr. Herrera is a 37-year-old native and citizen of Guatemala. Prior to his arrest by the ICE agents that formed the basis of this case, he had been living in the Trenton area of New Jersey since about 2007. Mr. Herrera left the poverty he experienced in Guatemala hoping for a better life in the United States. During his years in New Jersey, he was continuously employed at various construction jobs, always mindful to send money back to his loved ones in Guatemala, including his mother who has a heart condition and has not been well for a number of years.

It was in the United States where he met and fell in love with Ana, his wife and mother of his two small children. When Mr. Herrera was arrested in April, the couple had recently learned that Ana was pregnant with their third child, who is due to be born on October 25th. Recognizing that Mr. Herrera will be deported following the conclusion of this criminal prosecution,[1] the family made the decision for Ana to voluntarily leave the United States with their two children (both of whom are U.S. citizens) and re-establish a life in Guatemala. With Mr.

[1] Mr. Herrera has a final order of removal – it is anticipated that he will be removed to Guatemala immediately after the conclusion of this case.

Herrera in prison, the burden fell on Ana to dismantle their entire life in New Jersey and move their young family to Guatemala. Doing this while heavily pregnant was a tremendous strain on Ana, and as her letter to the Court reflects, her most sincere wish is that Marco be returned to Guatemala before the birth of their child, so that she does not have to face the burden of childbirth and parenting alone.

The circumstances of this case have been explained by the PSR and within this Memorandum. Mr. Herrera has tremendous regret over resisting arrest. Given the current political climate and news of the targeted enforcement efforts of ICE, Mr. Herrera was aware that his status as an undocumented immigrant carried significant risks. His reaction to the officers that day was primarily caused by the fear of being separated from his family. That fear has come to fruition, and Mr. Herrera has been separated from his family for nearly six months, and at a time when he has been needed the most.

The Need for the Sentenced Imposed

18 U.S.C. § 3553(a)(2)(A)-(D) requires the Court to consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate

deterrence to criminal conduct, and protect the public from further crimes of the defendant.

Mr. Herrera has been in continuous custody since his arrest by ICE agents on April 1, 2026, a period of nearly five months. Mr. Herrera did not contest the removal proceedings against him, and a final order of removal was lodged. At some point after the final order of removal was entered but before his arraignment in this case on May 13, 2026, Mr. Herrera was transported by ICE to a detention facility in Louisiana as an antecedent to his removal to Guatemala. Before he could be removed to Guatemala, ICE was apparently made aware of the indictment in this case and Mr. Herrera was transferred back to this jurisdiction for arraignment.

While resisting arrest by a federal officer is undoubtedly serious, once Mr. Herrera was in custody, he immediately admitted his unlawful presence in the United States and did not contest his removal to Guatemala, even despite the fact that his family was still living in New Jersey at that time. During this experience, Mr. Herrera has gained a respect and fuller understanding of the American criminal justice system. And Mr. Herrera has been specifically deterred from future criminal conduct as a result of this prosecution: The genesis of his criminal conduct was his illegal status in the United States – once Mr. Herrera is removed to

Guatemala, he will be reunited with his family and will not return to the United States. Had Mr. Herrera not resisted the officers that day, he would already be in Guatemala with his family, and this knowledge weighs heavily on him each and every day. Mr. Herrera has been forever changed by this experience.

## IV. CONCLUSION

Mr. Herrera submits that sentence of time-served, which will either fall within the guidelines if his objection is granted or may be a slight variance from the bottom of the guidelines if it is not, is sufficient but not greater than necessary to comply with the purposes of sentencing, *see* 18 U.S.C. § 3553(a). And, it is well to note that even if the Court gives Mr. Herrera a time-served sentence, he will still remain in custody for a few weeks while the administrative steps to remove him to Guatemala are underway. Mr. Herrera has deep regret over his conduct, and his detention has caused his wife and children to shoulder unnecessary burdens because Mr. Herrera has not been there to share them. Mr. Herrera has learned a lifelong lesson as a result of this case, and intends to live out the balance of his life quietly in Guatemala with his family.

Mr. Herrera respectfully requests that sentencing be scheduled in his case as soon as possible.

Respectfully submitted,

Date: September 28, 2026

*s/ Amanda R. Gaynor*
Amanda R. Gaynor, Esquire
Assistant Federal Public Defender
Attorney I.D. # PA204831

330 Pine Street, Suite 302
Williamsport, PA 17701
TEL: 570-323-9314
FAX: 570-323-9836
*amanda_gaynor@fd.org*
Attorney for Marco Antonio Herrera

## CERTIFICATE OF SERVICE

I, Amanda R. Gaynor, Assistant Federal Public Defender, do hereby certify that the **Defendant's Sentencing Memorandum**, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing:

Geoffrey W. MacArthur, Esquire
Assistant United States Attorney

and by placing the same in the United States Mail, first class in Williamsport, Pennsylvania, addressed to the following:

Marco Herrera

Date: September 28, 2026

*s/ Amanda R. Gaynor*
Amanda R. Gaynor, Esquire
Assistant Federal Public Defender